Nott, J.,
delivered the opinion of the court:
This action is brought on an implied warranty of title, arising out of the sale of personal property to the claimant by an officer of the Quartermaster Department. The material facts are these.
On the 13th March, 1865, the commanding officer of the military District of Southwest Missouri by a general order directed all commissaries and quartermasters throughout the district “ to sell such property not suitable for use or issue as may have been, or may hereafter be, turned over to them by the officers of the provost-marshal’s department.” The sales were to be public, ujmn notice “ to be given in the manner prescribed in the case of sales of condemned property “the proceedings and reports of said sales ” were to be “ approved by the general commanding the district”; and “all proceeds arising from such sales” were to be “accounted for in the same manner as proceeds arising from the sale of condemned property.”
At that time Capt. R. B. Owen, an assistant quartermaster of volunteers, on duty at Springfield, Mo., as. chief quartermaster of the District of Southern Missouri, had in his custody a piano, which, on the 6th May, 1865, he sold at public auction to the claimant. On the 23d August, 1866, the owner of the piano brought an action of replevin against the claimant and recovered it from him. The claimant now brings his action against the government to recover back the purchase money which he paid and the costs to which he was subjected.
If an action like this can be maintained against the government (upon which point we express no opinion) it is manifest, we think, that it must stand upon the basis of the government having in its possession money of the claimant which, in equity and good conscience, it should not withhold from him, and for which, upon a well settled principle of law, he should have an action to recover it back as money had and received to his use. But in this case all that is established by competent evidence is that a military officer, without authority of law, sold certain *506 personal property to the claimant and received from him the purchase money thereof for which he has never accounted to his principal, the defendants in this suit.
It is true that the claimant has given in evidence the testimony of the officer’s clerk to the effect that he did report the sale and take up the proceeds on his accounts; but we cannot accept such testimony standing alone as evidence of the fundamental fact that the government has in its possession, actually or constructively, the money of the claimant.
It is also true that the claimant’s counsel has cited the decisions of this court in a number of abandoned or captured property cases to sustain the proposition that a presumption arises that the officer did his duty, from which the court may infer, in the absence of proof to the contrary, that the money actually reached the Treasury or was properly expended for and on behalf of the government. But this court never in fact decided that seizure by an officer raised the presumption that captured property was forwarded and sold, or that the proceeds reached the Treasury. The farthest which this court ever went in those cases was to hold that where a capture was shown on the one hand and a fund appeared in the Treasury on the other, derived from, property of the same Hand, captured about the same time, and brought from the same place or vicinity, a presumption arose from those facts that the claimant’s property contributed to the unidentified fund in the Treasury. lioss's Case, (12 C. Cls. R., 565, 577). As to the presumptions of law which do and do not arise from mere official duty, it is sufficient to refer to the exhaustive opinion of our brother Richardson in Johnson's Case (14 C. Cls. R., 276).
The judgment of the court is that the claimant’s petition be dismissed.